**SO ORDERED.**

**SIGNED this 02nd day of November, 2006.**

_____
LARRY E. KELLY
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELBERT FRANK OTERO, JR., | § | CASE NO. 06-30691-LEK |
| and STEPHANIE LYNN OTERO, | § | |
| | § | Chapter 7 |
| Debtors. | § | |

**MEMORANDUM OPINION**
**REGARDING MOTION OF THE UNITED STATES TRUSTEE TO DISMISS**
**UNDER 11 U.S.C. § 707(b) FOR ABUSE**

On September 19, 2006, the United States Trustee filed a Motion to Dismiss this case under 11 U.S.C. § 707(b), alleging it was an "abuse" within the meaning of that provision. The Debtors filed a Response opposing the Motion, and the court set a hearing on October 19, 2006. Prior to that hearing, counsel for the parties contacted the court and requested that the court decide the threshold legal issue before conducting a hearing on the factual issues which would only arise if the court did not deny the Motion in the first stage of its decision-making. The parties and the court agreed that the threshold legal issue could and would be decided on stipulated facts and the court took that matter under advisement, continuing the hearing until November 14, 2006, to consider disputed factual issues, if any remained at that time. The court has reviewed the Motion and the Response, as well as some supplemental authorities submitted

by counsel informally, and for the reasons stated below, now finds and concludes that the Motion should be denied. According, the hearing in November is mooted and will be cancelled.

The legal issue presented is whether a Chapter 7 debtor may deduct, in calculating his or her current monthly income under 11 U.S.C. § 707(b)(2), payments on a loan from the debtor's 401K account. Specifically, the question is whether such payments may be included as some of a "debtor's average monthly payments on account of secured debts" as defined by § 707(b)(2)(A)(iii). The United States Trustee argues that they may not, and that if these Debtors' current monthly income is calculated without that deduction, the presumption arises that this filing is an abuse of the provisions of Chapter 7. *See* 11 U.S.C. § 707(b)(1) ("the court, . . . on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter"). Conversely, if the 401K loan payments in this case are deductible, the Debtors' other income and expense figures are such that no presumption of abuse would arise.

To calculate current monthly income, debtors in Chapter are permitted to deduct the expenses listed in § 707(b)(2)(A), and must complete and file Official Form B22A, the "Statement of Current Monthly Income and Means Test Calculation." 11 U.S.C. §§ 521(a)(1)(B)(v), 707(b)(2)(C), Interim Rule 1007(b)(4) (adopted by this court by Standing Order signed October 21, 2005). The Official Form, which is applicable to debtors filing Chapter 7 cases only, provides in Part C, Line 42, a deduction for "[f]uture payments on secured claims" and requires the debtor to list the average monthly payments "[f]or each of your debts that is secured by an interest in property that you own . . .." Debtors in this case listed on Line 42(c): "Great American Life, Retirement Plan, $215.53" and included that amount in their total on Line 42.

### The Parties' Arguments

The United States Trustee argues that "a loan from a retirement account does not create a debtor-creditor relationship that could give rise to a secured claim," citing **In re New York City Employees' Retirement System v. Villarie (In re Villarie)**, 648 F.2d 810 (2d Cir. 1981), **In re Esquival**, 239 B.R. 146 (Bankr. E.D. Mich. 1999), and **In re Johnson**, 241 B.R. 394 (Bankr. E.D. Tex. 1999). He contends that rather than loans, the money received by the Debtors from

2

their retirement accounts was merely "an advance against their future retirement benefits" and if the monies are not repaid before retirement, "the retirement plan does not have a right to sue the debtors for the unpaid loan balance; rather the retirement account system's only recourse is to reduce future retirement benefits to which the debtors would be entitled." Therefore, he asserts, the 401K loan is not a secured claim as that term is used in § 707(b).

The Debtors respond that these cases pre-date BAPCPA and its new "means test" scheme by many years, and that they are not relevant to the new test which is contained in § 707(b)(2)(A)(iii)(I).[1] That section, they contend, provides that the only requirement of "average monthly payments on account of secured debts" is that they must be payments "contractually due to secured creditors . . .." The numerous provisions of BAPCPA that are intended to protect and preserve debtors' retirement plans, the Debtor contend, are strong evidence of legislative intent to overrule the older cases cited by the United States Trustee. *See generally* 11 U.S.C. §§ 362(b)(19) (excepting from the automatic stay collection actions by retirement plan administrators), 522(d)(12) (allowing an exemption for "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986"), 522(n) (limiting that exemption as to certain retirement accounts to $1,000,000, but also providing an exception to that limit where "if the interests of justice so require"), 523(a)(18) (providing that loans from certain retirement accounts are non-dischargeable), and 541(b)(7) (providing that property of the estate does not include, among other things, amounts withheld by the debtor's employer from the debtor's wages as contributions to certain employee benefit plans).

Citing to the terms of the loans as described in the documents attached to the Debtors' Response, they point out that their loans from their retirement accounts meet the definitions of "debt" and "claim" set forth in the Bankruptcy Code. Section 101(12) and (5) provide, respectively, that "[t]he term 'debt' means liability on a claim" and "[t]he term 'claim' means–

    (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured, or
    (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy

---

[1] Debtors in their Response, at page 6, para. 2, mistakenly cite to § 707(b)(2)(B)(iii)(I), which does not exist, but quote § 707(b)(2)(A)(iii)(I).

3

is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured, or unsecured."

The Debtors argue that the loan documents establish, at worse, a non-recourse loan that would still be a claim against the Debtors as defined in § 101(5)(A).

The United States Trustee relies mostly on his argument that the presence in Chapter 13 of an express provision in § 1322(f) that allows a deduction of retirement plan loan repayments from disposable income, and the absence of such a provision in Chapter 7, is evidence that the amendments under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") were intended to not allow the deduction the Debtors here seek to take. He finds strong support, he claims, in the fact that Official Form B22C, which is applicable only in Chapter 13 cases, expressly allows such a deduction by including a specific line item to list such such payments and include them in total deductible expenses, but Official Form B22A, applicable in Chapter 7 cases, has no such provision. *See* Official Form B22C, Line 55 ("Qualified retirement deductions. Enter the monthly average of (a) all contributions or wage deductions made to qualified retirement plans, . . . and (b) all repayments of loans from retirement plans, as specified in § 362(b)(19).").[2]

The Debtors respond that the only reason there is no provision in Chapter 7 that corresponds to § 1322(f), is that the concept of "disposable income," which § 1322(f) defines, does not apply at all in Chapter 7. It follows, they reason, that the Official Form used in a

---

[2] Section 362(b)(19) of the Bankruptcy Code provides:

The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay . . . of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer--
    (A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or
    (B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;
but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title . . ..

4

Chapter 7 case might omit the specific reference to the deduction contained in the Form used in Chapter 13 cases. They also argue that the Official Forms do not control; rather, they "shall be construed to be consistent with [the Bankruptcy] Rules and the Code." F.R.B.P. 9009 (1991); *see also* 28 U.S.C. § 2075 (2005) (the Bankruptcy Rules "shall not abridge any substantive right").[3]

The Debtors' arguments also point to the fact that the payments they propose to deduct are entirely and expressly deductible in a Chapter 13 case. While the United States Trustee argues that this implies that they are *not* deductible in a Chapter 7 means test, because there are no equivalent provisions in the statute and Official Form, the Debtors counter that the payments' deductibility in a Chapter 13 case is the very reason that § 707(b)(2)(A)(iii) should interpreted as also allowing the deduction, in order to avoid an illogical and unjust result. Specifically, they point out that the purpose of the means test imposed under BAPCPA is to identify those Chapter 7 debtors who have the financial ability to repay a significant portion of their debts, and to force those debtors to convert their case to one under Chapter 13, in which they will propose a plan that does pay at least a portion of their debts. *See e.g.,* 151 Cong. Rec. S2459, 2469-70 (March 10, 2005) ("This bill, with its means test, will discourage such abusive filings by restricting access to chapter 7 liquidation . . . ."); *see also* **In re Hardacre**, 338 B.R. 718, 720 (Bankr. N.D. Tex. 2006) ("Among the abuses identified by Congress [in enacting BAPCPA] was the easy access to chapter 7 liquidation proceedings by consumer debtors who, if required to file under chapter 13, could afford to pay some dividend to their unsecured creditors."). The Debtors here argue that if they are *not* allowed to deduct the loan payments in question from their Chapter 7 means test calculations, and are forced to convert to Chapter 13, under § 1322(f) they then *will* be allowed to deduct those same payments and will not be required to devote that income to a Chapter 13 plan. They further point out that under the United States Trustee's construction of the statute, this anomaly would be material only in the very few cases like theirs, where the amount of the monthly 401K loan payments alone is determinative of whether the debtors have more or less than the amount of "monthly disposable income under § 707(b)(2)" that would trigger a "presumption of abuse." *See* Official Form B22A, Lines 50-52.

---

[3] This court notes also that § 2075 further provides that "[t]he bankruptcy rules promulgated under this section shall prescribe a form for the statement required under section 707(b)(2)(C) of title 11 and may provide general rules on the content of such statement."). No such "general rules for the content of such statement" are contained in the Bankruptcy Rules, however, other than the Official Form itself.

5

**Discussion**

In addition to the authorities cited in their papers, the Debtors and the United States Trustee, through counsel, have also directed the court's attention to two recent decisions under BAPCPA on the issue presented here. In particular, the Debtors have directed the court's attention to **In re Thompson**, ___ B.R. ___, 2006 WL 2801882 (Bankr. N.D. Ohio 2006) and the United States Trustee to **In re Barraza**, 346 BR 724 (Bankr. N.D. Tex. 2006).

In the **Barraza** opinion, Bankruptcy Judge Nelms found that payments on a loan from a 401K plan could not be deducted in a Chapter 7 means test calculation. However, his analysis centered on the issue as framed by the litigants, which was whether or not the payments were deductible under § 702(b)(2)(A)(ii)(I) as "other necessary expenses," including "involuntary deductions," as those terms are used in the guidelines of the Internal Revenue Service applicable to the area in which the debtor resided. His opinion does not address, and apparently the parties did not raise, the issue of whether or not the payments in that case could be considered as "payments on account of secured debts" within the meaning of 11 U.S.C. § 702(b)(2)(A)(iii), which is the issue in this case.

In contrast, this court believes that the detailed and scholarly opinion of Judge Harris in the **Thompson** case is on point and persuasive with respect to this case. The relevant facts in this case, as to the question of the deductibility of the loan payments as payments on secured debts, are virtually indistinguishable from those addressed by Judge Harris.

The court also finds the analysis of the Debtors in this case, to the extent they expand on Judge Harris' reasoning, persuasive.

In addition, this court also notes that the term "security interest" is defined in 11 U.S.C. § 101(51) to be a "lien created by an agreement." Under 11 U.S.C. § 102(2), a "'claim against the debtor' includes claim against property of the debtor." The parties do not dispute that funds were advanced to the Debtors, that there exists documentation giving the plan administrator a "lien claim" against the funds in the Debtors' 401K accounts, and that such accounts represent property of the Debtors. Each loan is therefore certainly a "claim against property of the debtor" and so also a "claim against the debtor," which makes the interest of the plan administrator a "security interest" against property of these Debtors. This court thus concludes that each loan is a "secured claim" within the intendment of 11 U.S.C. § 702(b)(2)(A)(iii).

Therefore, based on the court's analysis in **Thompson** (which, in the interest of brevity, is incorporated herein but not repeated), and on the analysis of the Debtors in this case, which the court also adopts, and for the foregoing reasons, this court finds that the payments at issue are "payments on account of secured debts" and are thus deductible from the Debtors' current monthly income in determining whether a presumption of abuse under arises under § 702(b)(2)(A).

In addition and in the alternative, in light of the fact that such payments are completely deductible under the Code's provisions governing Chapter 13 cases, and because no additional funds exist in this case that would be available to fund a Chapter 13 plan, the court finds and concludes that these facts constitute "special circumstances" that, under § 702(b)(2)(B), rebut any presumption of abuse.

Judge Nelms summarized one of the arguments of the debtors in the **Barraza** case: "[s]tated another way, why would Congress presume under section 707(b)(2)(A) that this amount of money could be used to pay unsecured creditors, and then deny unsecured creditors access to that money in chapter 13?" His response was that "[t]he court confesses that it does not know." This court believes that the ruling it makes now, that payments on a 401K loan are "payments of a secured debt" when the facts show the loan is properly subject to a "security interest," resolves the question articulated by Judge Nelms, and further believes that logic and common sense dictate that, at least when the payments at issue would be specifically excluded from disposable income in a Chapter 13 case and no other disposable income would exist to fund a Chapter 13 plan, the loan payments constitute "special circumstances" that are a defense to a finding of abuse of the provisions of Chapter 7.

## Conclusion

The court finds and concludes that the Debtors' 401K loan payments may be included as "payments on secured debts" for purposes of their means test under 11 U.S.C. §702(b)(2), and therefore finds that no presumption of abuse arises in this case. Accordingly, the court finds that the Motion to Dismiss should be denied. A separate order so providing will be entered.

As stated above, in light of the court's ruling, the hearing on the Motion to Dismiss that was to be set for November 14, 2006, is now moot.

# # #

wpdocs\opinions\Otero 707(b) mtn\draft 3.wpd